In re Larry Eugene ROGERS, Haydon Rogers, Debtors.

Leandra WALKER, Trustee, Plaintiff,

v.

WEST KENTUCKY PRODUCTION CREDIT ASSOCIATION, Third Party Plaintiff,

v.

PLANTERS BANK & TRUST COMPANY, Third Party Defendant.

Bankruptcy Nos. 5–82–00123, 5–82–00124. Adv. No. 5–82–0047.

United States Bankruptcy Court, W.D. Kentucky.

March 14, 1984.

W. Douglas Myers, Hopkinsville, Ky., for Hancock.

J. Daniel Kemp, Hopkinsville, Ky., for PCA.

Michael Murphy, Paducah, Ky., for debtors.

Lucius P. Hawes, Jr., Hopkinsville, Ky., for the trustee.

## MEMORANDUM OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This adversary proceeding was initiated by the trustee in bankruptcy to recover proceeds from the sale of debtors' 1981 tobacco crops. On February 9, 1983, the trustee abandoned claim to proceeds, leaving for judicial determination the priority status claimed by two creditors herein, West Kentucky Production Credit Association (PCA) and Cooper Harton and William Hancock, Jr., d/b/a Hancock-Cooper-Harton Tobacco Warehouse (Hancock).

This Court finds that PCA's prior lien of record constitutes a superior lien to proceeds from debtors' 1981 tobacco crops. PCA is therefore entitled to said proceeds abandoned by the trustee and held as property of debtors and proceeds possessed by Hancock.

## FINDINGS OF FACT

PCA made advancements to debtors, Larry Eugene Rogers and Haydon Rogers, in amounts of $14,228.11 and $12,037.63, respectively, more than six (6) months prior to debtors' planting of tobacco crops in June, 1981. These debts were properly secured by PCA's lien of record encumbering debtors' 1981 tobacco crops and proceeds thereof. On August 5, 1981, notes reflecting debtors' loan obligations to PCA were rewritten in accordance with prior agreement of the parties to include accrued interest charges and miscellaneous ex-

penses totaling $1,636.80. These notes were filed by PCA in August of 1981 in Trigg County and Caldwell County as required for proper perfection of PCA's interest in the 1981 tobacco crops and proceeds thereof. In November of 1981, PCA further noticed Hancock of PCA's encumbrance against the crops and any proceeds resulting from sale of the collateral.

Between June 5, 1981 and December 24, 1981, Hancock advanced $20,800.00 to debtors as financing for production of the 1981 tobacco crops. The lien securing this debt was evidenced by a financing statement dated June 5, 1981, which remained unrecorded until Hancock attempted filing on April 23, 1982 in Caldwell County and in Trigg County on May 23, 1983, both acts of filing subsequent to debtors' petitioning for relief in bankruptcy on March 31, 1982.

Between December 10, 1981 and March 18, 1982, Hancock served as warehouse facility for the auctioning of part of debtors' 1981 tobacco crops, said sale resulting in cash proceeds of $13,675.27. Between March 19, 1982 and March 25, 1982, debtors arranged for direct sale of the remaining tobacco crops from farm sites to United States Tobacco Company, netting proceeds from sale thereof of $12,881.40.

Both creditors, PCA and Hancock, now assert priority claims in the 1981 tobacco crop proceeds. Although PCA's interest in the crop collateral was first of record, Hancock claims priority to the proceeds pursuant to Kentucky Revised Statute (KRS) 355.9–312, which provides:

(2) A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops by planting or otherwise, even though the person giving new value had knowledge of the earlier security interest. Ky.Rev.St.Ann. (1982).

PCA challenges Hancock's claim of priority by asserting that the requisite elements of KRS 355.9–312(2) have not been proved. Specifically, PCA contends that KRS 355.9–312(2) is inapplicable because: (1) PCA's security interest is not an "earlier security interest" since filing of new notes occurred in August, 1981 after the crops had become growing crops; (2) Hancock's crop money lien filed subsequent to debtors' petitioning in bankruptcy was violative of the automatic stay provision, 11 U.S.C. § 362, and unenforceable in this proceeding; (3) Hancock did not perfect its crop money lien by possession when part collateral was physically within the warehouse for purposes of auction therein; and (4) debtor's obligations to PCA had not become due more than six (6) months before the 1981 tobacco crops were planted.

This Court addresses these legal issues and concludes as follows:

## CONCLUSIONS OF LAW

█ PCA first asserts that the rewritten note obligations filed of record on August 5, 1981 constitute a "subsequently" perfected security interest and not an "earlier" perfected security interest required by KRS 355.9–312(2). Although PCA did validly perfect a security interest in the total loan obligations owing by debtors on August 5, 1981, this filing of a new financing statement did not negate PCA's previous perfection achieved when the security agreement was originally entered into by the parties, value was given by PCA, debtors had acquired rights in the collateral, and PCA had properly filed a financing statement relevant thereto. The security agreement of the parties at the outset provided for periodic accrual of interest on debtors' obligations. PCA's later filing to reflect current total debt secured by the 1981 tobacco crops and proceeds merely insured PCA's interest in collateral to the extent of value represented by interest charges or miscellaneous expenses. Since the act of filing anew did not erode PCA's earlier status as secured creditor of debtors' 1981 tobacco crops and proceeds, this

Court concludes that PCA possessed the "earlier perfected security interest" required for application of KRS 355.9–312(2) in this proceeding.

■ PCA next challenges application of KRS 355.9–312(2), alleging that Hancock's crop money lien is unperfected due to the act of filing to perfect subsequent to debtors' invoking the automatic stay protection of 11 U.S.C. § 362. The automatic stay provision nullifies creditors' postpetition acts which interpose with bankruptcy policies allowing a debtor to rehabilitate financially. The stay also assures that the status of creditors as exists at the time of debtor's filing is maintained and orderly distribution of estate assets made accordingly. See *Matter of Dohm*, 14 B.R. 701 (Bkrtcy.N.D.Ill.1981). Specifically, 11 U.S.C. § 362 forbids a creditor's postpetition attempt to perfect a lien against estate property or enforce a lien against debtor's property if said lien secures a claim that arose prior to debtor's filing in bankruptcy. See 11 U.S.C. § 362(a)(4), (5). Although the mandate of 11 U.S.C. § 362 clearly establishes the nullity of Hancock's postpetition act of filing to perfect the crop money lien, Hancock argues that the automatic stay exception provided in 11 U.S.C. § 362(b)(3) allows its lien to be perfected by postpetition filing and enforceable against PCA pursuant to KRS 355.9–312(2).

Postpetition perfection is permitted by 11 U.S.C. § 362(b)(3) only to the extent that a trustee's rights and powers are subject to perfection under 11 U.S.C. § 546. See 11 U.S.C. § 362(b)(3). Section 546(b) provides that rights and powers of the trustee are subject to "any generally applicable law that permits perfection of an interest in property before the date of such perfection." See 11 U.S.C. § 546(b). Essentially, Hancock proposes that lack of a specified time in KRS 355.9–312(2) in which to file a lien securing a crop money loan is "generally applicable law" allowing this creditor to perfect by filing at any time, including postpetition filings.

However, this Court does not read KRS 355.9–312(2) so broadly as permitting creditors to file crop money liens to achieve priority status in contravention of federal bankruptcy law affording automatic stay protection to debtors herein. Rather, KRS 355.9–312(2) presupposes creditor's prepetition filing of the crop money lien by its absence of an expressed statutory period in which a creditor can file and gain advantage of a relation-back provision securing creditor at the time the prepetition security agreement arose. See 11 U.S.C. § 546(b). Since KRS 355.9–312(2) is void of any intent for Hancock to be deemed perfected at a time prior to the bankruptcy filing even though the act of filing occurred postpetition, this Court finds that the postpetition filing by Hancock violated the automatic stay provision of 11 U.S.C. § 362 and is unenforceable for purposes of this proceeding.

■ To bring this proceeding within the language of KRS 355.9–312(2), Hancock next argues that its crop money lien was perfected when Hancock held part of debtors' 1981 tobacco crops at the warehouse for customary auctioning of crops therein. Proceeds received from sales of debtors' tobacco at the warehouse totaled $13,675.27.

To determine whether Hancock validly perfected its crop money lien in part by possession of the collateral, this Court looks to the following Kentucky law.

Kentucky Revised Statute 355.9–302 provides:

(1) A financing statement must be filed to perfect all security interests except the following:

(a) A security interest in collateral in possession of the secured party under KRS 355.9–305.... Ky.Rev.Stat.Ann. (1982).

Kentucky Revised Statute 355.9–305 states in relevant part:

A security interest in ... goods ... may be perfected by the secured party's taking possession of the collateral... A security interest is perfected by possession from the time possession is taken without relation back and continues only

so long as possession is retained, unless otherwise specified in this article. *Id.*

Kentucky's Commercial Code defines "goods" to include "growing crops" and all "movable" items at the time of attachment. See Ky.Rev.Stat.Ann. 355.9–105(f) (1982).

Although perfection by possession is clearly allowed by applicable Kentucky law, the issue which must be addressed is whether Hancock had "possession" of the collateral in part when debtors delivered tobacco to the warehouse for purpose of selling the collateral at the seasonal auctions held at Hancock.

Although the warehouse took physical possession of part of debtors' 1981 tobacco crops, no evidence was offered by Hancock to show the necessary dominion and control over the property required for "possession" at common law. Debtors apparently made independent decisions concerning which crops to sell at creditor's warehouse and which to sell directly from farm sites to a tobacco company without utilization of warehouse facilities. No evidence indicated that debtors or the warehouse intended perfection to take place on that part of the crop temporarily located at the warehouse as opposed to Hancock's merely providing warehouse services and being compensated accordingly. The record also fails to show debtors' relinquishment of control to accept or reject bids at the auction when the collateral was physically possessed by Hancock. Furthermore, since notice to third parties is the basis of perfection of security interests, any "possession" claimed by Hancock must be measured by the warehouse's ability to give notice to third party creditors that tobacco held for sale therein has become subject to the warehouse's crop money lien. Unquestionably, a creditor would have no notice that a warehouse was attempting to perfect a security interest in crops temporarily housed in the warehouse for sale at debtors' direction for mere sale by auction therein. This Court therefore finds that Hancock did not show the requisite intent to possess and exercise control of the collateral sufficient to put third parties on notice of perfection of a security interest therein. Further, any such perfection by possession would have resulted in Hancock's status as unperfected when the tobacco was sold and removed from the warehouse prior to debtors' petitioning for relief in bankruptcy. See KRS 355.9–305.

■ The final issue argued by PCA to prove inapplicability of KRS 355.9–312(2) is whether PCA's loans to debtors "became due" more than six months before the crops became growing crops in June, 1981. PCA argues that had there been a request for payment on the demand notes, such request would have been made in August, 1981 when the notes were refinanced, not six months before debtors planted their crops. Since Hancock offered no evidence that demand for payment was made by PCA within the time required by KRS 355.-9–312(2), this Court concludes that Hancock has failed to meet its burden of proving this requisite element of KRS 355.9–312(2) upon which it has relied for priority.

■ Hancock belatedly proposes in its reply brief that a question of fact exists regarding PCA's knowledge of the crop money lien when PCA filed new notes to perfect an interest in crops on August 5, 1981. Hancock cites *Holt v. Farmers Loose Leaf Tobacco Warehouse Co.*, 201 Ky. 184, 256 S.W. 6 (1923), as authority for a finding of the warehouse's priority status if PCA had actual knowledge of the lien when filing to continue perfection of its interest in the same collateral.

The Court finds this issue improperly presented by Hancock in its reply brief. By agreement of the parties and order of the Court, this case was decided pursuant to memoranda filed by the parties since only issues of law, and not of fact, appeared in question. Hancock neither raised a factual issue in its pleadings or initial trial memorandum and cannot properly do so in a reply brief. Further, the Court finds that *Holt* is not dispositive of the issue. In *Holt*, a mortgage on a tobacco crop, prior in time but unrecorded, was held prior and superior to a subsequent mortgage delivered to one having knowl-

edge of the prior mortgage. Since the facts in *Holt* differ from those in the case at bar, this Court finds no basis for Hancock's claim of priority though unrecorded by application of Kentucky law.

This memorandum opinion constitutes findings of fact and conclusions of law pursuant to Rule 7052, Rules of Bankruptcy Procedure, and an appropriate order has been entered this 14th day of March, 1984.