**CROCKER NATIONAL BANK,**
Plaintiff–Appellant,

and

**T.O.S. Industries, Inc.,**
Intervenor–Appellant,

v.

**IDECO DIVISION OF DRESSER INDUSTRIES, INC.,**
Defendant–Appellee.

No. 87–2634.

United States Court of Appeals,
Fifth Circuit.

March 15, 1988.

---

Ann Spiegel, Tim S. Leonard, H. Victor Thomas, Kirklin, Boudreaux & Joseph, Houston, Tex., for T.O.S. Industries, Inc. & Crocker Nat. Bank.

James R. O'Donnell, Kevin F. Risley, Butler & Binion, Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, BRIGHT,* Senior Circuit Judge, and GEE, Circuit Judge.

BRIGHT, Senior Circuit Judge:

## I. BACKGROUND

In this case we determine the security interests, and their relative priority, of appellee Ideco Division of Dresser Industries, Inc. (Seller), the unpaid seller-manufacturer of drilling rigs; appellant T.O.S. Industries, Inc. (Buyer), who agreed to purchase the drilling rigs; and appellant Crocker National Bank (Bank), the holder of a security interest in the Buyer's inventory.

Sometime in 1981, the Buyer agreed to purchase forty drilling rigs, their engines and control units, from the Seller. In January 1982, the Buyer informed the Seller that it did not need the rigs. The Seller, however, informed the Buyer that it was too far along in the manufacture of six of the rigs to cancel the order and that the Buyer would have to purchase these six rigs. The Seller continued to send invoices for the goods to the Buyer. These invoices stated that the goods were to be "held for shipping instructions" and contained an F.O.B. point of shipment term. The Seller

---

* Senior Circuit Judge of the Eighth Circuit, sitting by designation.

retained possession of the rigs. The Seller accounted for the rigs as a sale and, accordingly, its records showed an increase in accounts receivable and a decrease in inventory.

In July 1982, the Seller stopped sending invoices for the six rigs and issued credit memoranda reflecting the cancellation of the Buyer's indebtedness and executed a mutual release with the Buyer whereby each party released the other from all contractual obligations arising from the sale of the six rigs.[1] At that time the Seller's books showed an increase in inventory and a decrease in accounts receivable. Approximately one month later, the Buyer filed for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101, *et seq.*

In May of the following year, the Bank filed its complaint in the district court, based on diversity of citizenship, 28 U.S.C. § 1331, asserting that it is entitled to recover the rigs, engines and control units from the Seller on the basis of a security interest in the inventory of the Buyer which it had perfected by the filing of financing statements. The Buyer moved to intervene, asserting that as debtor in possession it might avoid its transfer of the goods to the Seller.

Both the Bank and the Seller filed motions for summary judgment, each asserting a perfected security interest in the goods entitled to preference. The Honorable Lynn N. Hughes, United States District Judge for the Southern District of Texas, 660 F.Supp. 192, granted summary judgment in favor of the Seller, holding that the Seller's perfected purchase money security interest prevails over any interest held by the Bank. The court further held that the Buyer never possessed sufficient rights in the goods to convey a security interest to the Bank. Finally, the district court concluded that neither the Buyer nor the Bank acquired any interest superior to that of the Seller in the engines, which had been shipped to a third party, Continental Drilling Company.

This appeal followed.

## II. DISCUSSION

Summary judgment shall be granted only when the moving party establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing an order granting summary judgment we must consider the evidence in the light most favorable to the party opposing the motion, *McPherson v. Rankin*, 736 F.2d 175, 177–78 (5th Cir.1984), *aff'd*, ―― U.S. ――, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), and resolve all reasonable inferences in his favor, *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985). In this case, the relevant facts are not disputed but the parties reach differing legal conclusions on those facts.

### (A) The Rigs

The Seller contends that it retained an interest in the rigs superior to any interest possessed by the Buyer or the Bank by virtue of its continued possession of the rigs.

■ A seller who retains title to goods retains a security interest in those goods. § 2.401.[2] A security interest in goods obtained through continued possession by a seller for the purpose of securing the purchase price of the goods is a purchase money security interest. § 9.107. This security interest is perfected by the seller's continued possession of the goods. § 9.305.[3] Thus, so long as the Seller retains possession of the rigs in order to secure payment by the Buyer, its security interest remains perfected.

---

**1.** The Seller apparently sought a clear title in order to resell the rigs.

**2.** All references to sections are to the Texas Business & Commerce Code Annotated (Vernon 1968 and Supp.1988), unless otherwise noted. We have reproduced pertinent code sections in the appendix to this opinion.

**3.** Section 9.113 recognizes the seller's security interest arising under Article 2 of the Code. Where the seller does not relinquish possession of the goods, no filing is required to perfect its security interest. § 9.113(2).

The Buyer and the Bank argue, however, that while the Seller retained physical possession of the rigs, the Buyer acquired constructive possession of them which served to oust the Seller of its security interest.

### (1) Present Sale

■ The Buyer and the Bank rely on the Code's "present sale" concept to support their argument.

Unless otherwise explicitly agreed, title to goods generally passes to the buyer when the seller completes his performance with reference to physical delivery of the goods. § 2.401(b). Section 2.401(c) contemplates an agreement that delivery shall take place without moving the goods. *See Borg–Warner Acceptance Corp. v. Massey–Ferguson*, 713 S.W.2d 351, 353 (Tex.Ct. App.1985). The Buyer and the Bank rely on this latter section. They argue that the notation on the rig invoices to "hold for shipping instructions" evidence the agreed intent of Buyer and Seller that title shall pass at the time the rigs are identified to the contract and without physical delivery of them.

We reject this contention. The record unequivocally demonstrates that the parties never agreed to transfer title other than by delivery. The Code makes clear that the F.O.B. term is a delivery term, § 2.319(a), and that F.O.B. point of manufacture indicates that the seller must place the rigs in the hands of a common carrier at the point of manufacture. § 2.319(a)(1). Thus, the terms of the invoice oblige the Seller to deliver the rigs to a carrier. Title, therefore, passes only when that delivery obligation is met. § 2.401(b).[4]

The notation "hold for shipping instructions" does not conflict with the F.O.B. term. Whenever a sales agreement contains an F.O.B. term, except when the term is F.O.B. destination, the buyer must seasonably provide the seller with any needed shipping instructions. § 2.319(c). The "hold for shipping instructions" notation simply recognizes the buyer's "obligation of cooperation," comment 3 to § 2.319, with the seller. Those instructions, without more, do not effect the transfer of title of the goods to the Buyer.

The Buyer and the Bank attempt to negate the effect of the F.O.B. term by pointing to the Buyer's business practice of storing its inventory with its seller until a resale buyer is found. This practice, they contend, at least creates a genuine issue of material fact as to whether a present sale was intended. The proffered evidence, however, relates to circumstances surrounding the Buyer's transactions with other parties, not the arrangement between these parties. Thus, we reject this contention of the Buyer and the Bank.

■ The Buyer and the Bank also attempt to negate the F.O.B. term by referring to the Seller's accounting records reflecting an increase in its accounts receivable and a decrease in its inventory upon invoicing. These record transactions do not determine title. They represent bookkeeping procedures performed by the accounting department which do not negate the express delivery term of the agreement.

The district court therefore properly concluded under the undisputed evidence that no present sale occurred and that title to the rigs remained with Buyer.

### (2) Rights in the Collateral

The Buyer and the Bank argue in the alternative that the Buyer obtained rights in the rigs sufficient to transfer a security interest to the Bank.

**4.** The circumstances here differ from those discussed by Donald L. Kreindler in his article *The Uniform Commercial Code and Priority Rights Between the Seller in Possession and a Good Faith Third–Party Purchaser*, 82 Comm.L.J. 86, 88 (1977), relied upon by appellants. Kreindler comments that "[i]n the absence of any clear contrary [contractual] provision, it would appear that the normal commercial understanding of an invoice denotes that title has passed upon the issuance of the invoice notwithstanding the seller's retention of possession." As we have discussed, the F.O.B. provision here clearly delineates Seller's delivery obligation and title will pass only when that obligation is met.

A security interest attaches and is enforceable against the debtor and third parties when (1) the collateral is in the possession of the secured party *or* the debtor has signed a security agreement containing a description of the collateral; (2) value has been given; and (3) the debtor has rights in the collateral. § 9.203(a). Here Buyer signed a security agreement with the Bank whereby the Bank obtained a security interest in the Buyer's inventory. In return, the Bank advanced funds to the Buyer.

When goods are identified to a contract, a buyer acquires a special property and insurable interest in those goods. §§ 2.401(a), 2.501. The Buyer and the Bank argue that the special property interest which the Buyer acquired by identification of the six rigs to the contract constitutes a sufficient right in the collateral to permit the Bank's security interest to attach to the rigs.

The Uniform Commercial Code does not define the term special property interest. However, comment 3 to § 2.401 indicates that the special property interest is not a security interest but essentially relates to a purchaser's remedial rights. "[I]ts incidents are defined in provisions of the Article such as those on the rights of the seller's creditors, on good faith purchase, on the buyer's right to goods on the seller's insolvency, and on the buyer's right to specific performance or replevin."

The Buyer and the Bank argue that because § 9.203 does not specify any minimum quantum of rights in the collateral that must be held by a debtor before a security interest can attach, the special property interest is sufficient for a security interest to attach. The parties rely on *L.B. Smith, Inc. v. Foley*, 341 F.Supp. 810 (W.D.N.Y.1972) and *In re County Green*

*Ltd. Partnership*, 438 F.Supp. 693 (W.D. Va.1977), but miss the important distinction in both of those cases that the buyer had physical possession of the goods to support the attachment of a security interest.

The court in *In re County Green* held that "the mere delivery of the appliances to the construction site for use on the construction project gave the debtor rights in the collateral for purposes of § [9.203]." 438 F.Supp. at 696. In *County Green*, the buyer actually possessed the goods and thus the case is distinguishable from the present facts.

*L.B. Smith, Inc. v. Foley* arises in a different factual framework. There the Internal Revenue Service asserted a tax lien on two trailers delivered by the seller to the buyer pursuant to a conditional sales agreement. The buyer never made any payment to the seller for the trailers. The district court was called upon to determine the relative priorities of the IRS's tax lien and the unperfected interest of the unpaid seller. In determining whether or not the IRS's lien was perfected, the court examined the issue "whether and to what extent the taxpayer-conditional vendee had property and rights to property in the two Coastal Trailers to which the federal tax lien could attach." 341 F.Supp. at 813. The court concluded that "[w]hatever the full nature of this 'special property' interest in the buyer, it is of a nature sufficient to permit attachment of a lien by the buyer's creditor." *Id.* Although the court did not discuss the buyer's possession of the trailers, that change of possession to the buyer did occur and the opinion must be read and construed in light of the buyer's possession.[5]

In *In the Matter of Samuels & Co.*, 526 F.2d 1238 (5th Cir.) (en banc), *cert. denied*,

---

**5.** *L.B. Smith, Inc. v. Foley* is the basis for the statement that "a debtor has rights in the collateral if he * * * is a buyer with special property rights in goods by virtue of U.C.C. § 2–501, even though he has not yet acquired title under U.C.C. § 2–401 * * *." 8 ANDERSON, UNIFORM COMMERCIAL CODE § 9–203.45. The other case relied upon by Anderson for this proposition, *Holstein v. Greenwich Yacht Sales, Inc.*, 122 R.I. 211, 404 A.2d 842 (1979), is also distinguishable from this case. There the Rhode Island court held that the special property interest acquired by the buyer of an undelivered sailboat was superior to the security interest of the seller's floor-plan financer. *Holstein*, however, is distinguished because it did not determine the rights of the buyer as against the seller/holder of a purchase money security interest in the goods. Retention of possession was not an issue in *Holstein*, while it is central to the rights of the parties here.

429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976), this court focused on the importance of possession in determining the relative rights of parties claiming a security interest in property. The opinion addressed the following question: is the interest of an unpaid cash seller in goods already delivered to a buyer superior or subordinate to the interest of a bank, the holder of a perfected security interest in those same goods? *Id.* at 1241. This court held that the buyer had the right to encumber the goods upon their delivery having obtained that right upon acquiring possession of the goods. The decision rested upon possession. Indeed, as the opinion made clear, the bank's security interest attached *only* as a direct result of the seller's voluntary act of delivery of the cattle to the buyer without reserving any written security interest. *Id.* at 1247. *See Interfirst Bank of Abilene, N.A. v. Lull Mfg.*, 778 F.2d 228, 233 (5th Cir.1985).

This case is different from *Samuels*. The Seller never delivered the rigs to the Buyer. Nevertheless, the analysis in *Samuels* is important here because it demonstrates the important role of possession in determining rights in collateral. *See Kinetics Technology Int'l Corp. v. The Fourth Nat'l Bank of Tulsa*, 705 F.2d 396 (10th Cir.1983), where the court held that for a security interest to attach, a debtor must have some degree of control or authority over collateral placed in the debtor's possession.

The Seller in this case retained possession of the rigs at all times, thus preserving a purchase money security interest in them. The Buyer never paid for the rigs and never acquired any control over them. A holding that the Buyer could transfer a security interest to the Bank would contravene the general principle that one cannot encumber another person's property. *See Kinetics Technology Int'l Corp.*, 705 F.2d at 398. As the district court noted, "[i]t would astonish the sellers of the world to discover that a seller who has not parted with goods nor received payment for them

has an interest in the goods inferior to the creditor of a holder of an executory contract to buy them." Such a holding would offend the commercial expectations of all sellers who retain possession of goods to protect themselves against a defaulting buyer.[6]

■ We thus hold that where the seller has never relinquished possession of the goods the special property right of § 2.401 in and of itself does not constitute a sufficient right in the collateral to enable a buyer who has not paid for those goods to transfer a security interest in them to a third party.

Accordingly, the district court properly entered summary judgment in favor of the Seller with respect to the rigs.

**(B) The Control Units**

The district court failed to address the control units. However, the record before us indicates that the control units remained at the Ross Hill Company where they had been stored since the Ross Hill Company manufactured them for the Seller. There is no evidence that the control units were ever delivered to the Buyer. Thus, the above analysis with respect to the rigs applies to the control units and the summary judgment as granted included those items.

**(C) The Engines**

It appears from the record that the Caterpillar engines were delivered to a third party vendor Continental Drilling Company. However, the record is bare of explanation concerning the relationship of Continental Drilling Company to the Buyer and the Seller. Regardless, the Seller asserts that it exercised its right to reclamation of the rigs under § 2.705. The lack of evidence on this matter requires a remand of this portion of the case to the district court for further development of the record and appropriate disposition. As we have discussed, the crucial issue between the Seller and the Bank relates to whether or not the

---

6. One of a seller's remedies for non-payment by the buyer is to withhold delivery of the goods. § 2.703(a). The clear implication of § 2.703(a) is that the seller's right to withhold delivery under such circumstances is superior to any right held by the buyer or the buyer's creditors.

Seller retained a possessory interest in the goods.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court as applied to the drilling rigs and control units, but remand to the district court for further proceedings relating to the engines and the entry of an appropriate judgment as to these engines.

AFFIRMED AND REMANDED IN PART.

## APPENDIX

### § 2.319. F.O.B. and F.A.S. Terms

(a) Unless otherwise agreed the term F.O.B. (which means "free on board") at a named place, even though used only in connection with the stated price, is a delivery term under which

(1) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this chapter (Section 2.504) and bear the expense and risk of putting them into the possession of the carrier; or

(2) when the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in this chapter (Section 2.503);

(3) when under either Subdivision (1) or (2) the term is also F.O.B. vessel, car or other vehicle, the seller must in addition at his own expense and risk load the goods on board. If the term is F.O.B. vessel the buyer must name the vessel and in an appropriate case the seller must comply with the provisions of this chapter on the form of bill of lading (Section 2.323).

(b) Unless otherwise agreed the term F.A.S. vessel (which means "free alongside") at a named port, even though used only in connection with the stated price, is a delivery term under which the seller must

(1) at his own expense and risk deliver the goods alongside the vessel in the manner usual in that port or on a dock designated and provided by the buyer; and

(2) obtain and tender a receipt for the goods in exchange for which the carrier is under a duty to issue a bill of lading.

(c) Unless otherwise agreed in any case falling within Subsection (a)(1) or (3) or Subsection (b) the buyer must seasonably give any needed instructions for making delivery, including when the term is F.A.S. or F.O.B. the loading berth of the vessel and in an appropriate case its name and sailing date. The seller may treat the failure of needed instructions as a failure of cooperation under this chapter (Section 2.311). He may also at his option move the goods in any reasonable manner preparatory to delivery or shipment.

(d) Under the term F.O.B. vessel or F.A.S. unless otherwise agreed the buyer must make payment against tender of the required documents and the seller may not tender nor the buyer demand delivery of the goods in substitution for the documents.

### § 2.401. Passing of Title; Reservation for Security; Limited Application of This Section

Each provision of this chapter with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply:

(a) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2.501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in

effect to a reservation of a security interest. Subject to these provisions and to the provisions of the chapter on Secured Transactions (Chapter 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(b) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

(1) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(2) if the contract requires delivery at destination, title passes on tender there.

(c) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

(1) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

(2) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

(d) A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. Such revesting occurs by operation of law and is not a "sale".

## § 2.501. Insurable Interest in Goods; Manner of Identification of Goods

(a) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

(1) when the contract is made if it is for the sale of goods already existing and identified;

(2) if the contract is for the sale of future goods other than those described in Subdivision (3), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers;

(3) when the crops are planted or otherwise become growing crops or the young are conceived if the contract is for the sale of unborn young to be born within twelve months after contracting or for the sale of crops to be harvested within twelve months or the next normal harvest season after contracting whichever is longer.

(b) The seller retains an insurable interest in goods so long as title to or any security interest in the goods remains in him and where the identification is by the seller alone he may until default or insolvency or notification to the buyer that the identification is final substitute other goods for those identified.

(c) Nothing in this section impairs any insurable interest recognized under any other statute or rule of law.

## § 2.703. Seller's Remedies in General

Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (Section 2.612), then also with respect to the whole undelivered balance, the aggrieved seller may

(1) withhold delivery of such goods;

(2) stop delivery by any bailee as hereafter provided (Section 2.705);

(3) proceed under the next section respecting goods still unidentified to the contract;

(4) resell and recover damages as hereafter provided (Section 2.706);

(5) recover damages for non-acceptance (Section 2.708) or in a proper case the price (Section 2.709);

(6) cancel.

### § 2.705.  Seller's Stoppage of Delivery in Transit or Otherwise

(a) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent (Section 2.702) and may stop delivery of carload, truckload, planeload or larger shipments of express or freight when the buyer repudiates or fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods.

(b) As against such buyer the seller may stop delivery until

(1) receipt of the goods by the buyer; or

(2) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or

(3) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or

(4) negotiation to the buyer of any negotiable document of title covering the goods.

(c) (1) To stop delivery the seller must so notify as to enable the bailee by reasonable diligence to prevent delivery of the goods.

(2) After such notification the bailee must hold and deliver the goods according to the directions of the seller but the seller is liable to the bailee for any ensuing charges or damages.

(3) If a negotiable document of title has been issued for goods the bailee is not obliged to obey a notification to stop until surrender of the document.

(4) A carrier who has issued a non-negotiable bill of lading is not obliged to obey a notification to stop received from a person other than the consignor.

### § 9.107.  Definitions: "Purchase Money Security Interest"

A security interest is a "purchase money security interest" to the extent that it is

(1) taken or retained by the seller of the collateral to secure all or part of its price; or

(2) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

### § 9.113.  Security Interests Arising Under Chapter on Sales

A security interest arising solely under the chapter on Sales (Chapter 2) is subject to the provisions of this chapter except that to the extent that and so long as the debtor does not have or does not lawfully obtain possession of the goods

(1) no security agreement is necessary to make the security interest enforceable; and

(2) no filing is required to perfect the security interest; and

(3) the rights of the secured party on default by the debtor are governed by the chapter on Sales (Chapter 2).

### § 9.203.  Attachment and Enforceability of Security Interest;  Proceeds, Formal Requisites

(a) Subject to the provisions of Section 4.208 on the security interest of a collecting bank, Section 8.321 on security interests in securities, and Section 9.113 on a security interest arising under the chapter on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(1) the collateral is in the possession of the secured party pursuant to agreement or the debtor has signed a

 

security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned;

(2) value has been given; and

(3) the debtor has rights in the collateral.

(b) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in Subsection (a) have taken place unless explicit agreement postpones the time of attaching.

(c) Unless otherwise agreed a security agreement gives the secured party the rights to proceeds provided by Section 9.306.

(d) A transaction, although subject to this chapter, is also subject to Title 79, Revised Civil Statutes of Texas, 1925, as amended, and in the case of conflict between the provisions of this Chapter and any such statute, the provisions of such statute control. Failure to comply with any applicable statute has only the effect which is specified therein. [footnote omitted]

### § 9.305. When Possession by Secured Party Perfects Security Interest Without Filing

A security interest in letters of credit and advices of credit (Subsection (b)(1) of Section 5.116), goods, instruments (other than certificated securities), money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this chapter. The security interest may be otherwise perfected as provided in this

chapter before or after the period of possession by the secured party.