**Phillip KUNKEL, Trustee of the Bankruptcy Estate of John D. Morken, and Dorothy M. Morken, Plaintiff,**

**v.**

**SPRAGUE NATIONAL BANK, First National Bank of Hoxie, Kansas, Hoxie Feeders, Inc., Charles W. Ries, Trustee of the Bankruptcy Estate of Spring Grove Livestock Exchange, Inc., Firstar Bank Milwaukee, N.A. and Firstar Bank Sioux City, N.A., Defendants.**

Civil No. 4–95–359.
Bankruptcy No. 4–94–359.

United States District Court,
D. Minnesota,
Fourth Division.

July 22, 1996.

Thomas P. Melloy, Hall & Byers, St. Cloud, MN, for plaintiff.

Virginia A. Bell, Clark T. Whitmore, Maslon, Edelman, Borman & Brand, Minneapolis, MN, and Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, WI, for defendant Sprague National Bank.

Thomas E. Johnson, Altman & Izek, Minneapolis, MN, for First National Bank of Hoxie, Kansas.

Douglas B. Greenswag, Leonard, Street & Deinard, Minneapolis, MN, and Steven T. Waterman, Ray, Quinney & Nebeker, Salt Lake City, UT, for defendant Hoxie Feeders, Inc.

William S. Partridge, Farrish, Johnson & Maschka, Mankato, MN, for defendant Charles W. Ries.

James M. Caragher, Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, WI, for defendants Firstar Bank Milwaukee and Firstar Bank Sioux City.

## ORDER

DOTY, District Judge.

### INTRODUCTION

Presently before the court is the appeal of Sprague National Bank ("Sprague") from a judgment of the bankruptcy court[1] holding that appellee Hoxie Feeders, Inc. ("Hoxie"), was entitled to assert its perfected security interest in certain cattle. The judgment of the bankruptcy court is affirmed.

In December 1992, Sprague filed a financing statement with the Kansas Secretary of State which perfected its security interest in all present and after acquired inventory of

---

1. The Honorable Robert J. Kressel, United States Bankruptcy Judge.

John Morken which secured $1.9 million in loans made by Sprague to Morken. Although Morken is a Minnesota resident, all relevant events took place in Kansas.

Hoxie both sells cattle and provides feed and care for cattle which it does not own. In March and April of 1994, Hoxie agreed to sell Morken an interest in approximately 1,900 head of cattle through a series of sales transactions. The cattle were located on Hoxie's feedlot near Hoxie, Kansas. Hoxie and Morken executed two agreements with respect to each transaction. By the first agreement, ("loan agreement") Hoxie loaned Morken the purchase price of the cattle, minus a $100 per head "margin". (Appellee's Appendix Ex. D). Morken also agreed to grant Hoxie a purchase money security interest, and a related agreement memorialized this. (*Id.*). A separate agreement obligated Hoxie to properly feed and care for the cattle ("feedlot agreement"). (Appellee's Ex. E). By its terms, the feedlot agreement does not relate to Hoxie's sale of the cattle to Morken, but only describes the parties' agreement for the feed and care of the cattle.

Hoxie did not file a financing statement to perfect its security interest. Instead, the cattle never left Hoxie's possession while the sales contract remained executory. In June 1994, Morken filed for protection under Chapter 11 of the Bankruptcy Code. Subsequently, Hoxie sold the cattle to third parties. From amounts thus received, Hoxie deducted the monies owed it under the loan and feedlot agreements, and forwarded the rest to the Bankruptcy Trustee. The Trustee commenced this proceeding to determine, as between Sprague and Hoxie, which party had a priority interest in the proceeds of the sale. In March 1995, shortly before the bankruptcy court entered judgment, Hoxie sent Sprague a notice which stated that it had or expected to have a security interest in the now-sold cattle. (Appellee's Ex. F).

Ruling from the bench on the parties' cross-motions for summary judgment, the bankruptcy judge held that Hoxie had perfected its purchase money security interest through its continuous possession of the cattle. (Tr. of Hrg. April 26, 1995, at 34; Appellee's Addendum at 12). Turning to the

rules determining priority among competing security interests under Kan.U.C.C.Ann. § 84–9–312 (hereafter "Section 9–312"), the court determined that Sprague's prior security interest, perfected through filing, was junior to Hoxie's. The court reasoned that, assuming the cattle were "inventory", the requirement under Section 9–312(3) that a subsequent purchase money secured party give written notice to a prior secured party had been met. (Tr. at 35; Addendum at 13). Although Hoxie's notice postdated all significant events described above, Section 9–312(3)(a) and (c) expressly required only that the notice precede the debtor's possession of the collateral. Because the debtor never received possession (and never would, the court noted) the court found that Hoxie had literally complied with the statute. (Tr. at 35; Addendum at 13).

The court also ruled that Section 9–312 contained an "oversight" provision, in that it appeared to apply to cases where perfection of a purchase money security interest occurred through possession, without realizing that notice in such cases to prior secured parties was "superfluous". (Tr. at 35; Addendum at 13.) Thus, the court held that notice did not have to be given by Hoxie. (Tr. at 36; Addendum at 14.) Finally, the court alternatively stated that if the cattle were not "inventory", then Hoxie had priority without regard to notice under Section 9–312(4). (*Id.*). Sprague appeals.

## DISCUSSION

### I. Standard of Decision

■■■ This court's review of a bankruptcy court's grant of summary judgment is de novo. *In re Young*, 152 B.R. 939, 944 (D.Minn.1993). The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judg-

ment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510-11.

 On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250-51, 106 S.Ct. at 2511-12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

## II. Perfection and Priority

 Hoxie urges affirmance on two principal grounds. First, it asserts that the bankruptcy judge correctly determined that its perfected security interest was entitled to priority over Sprague's. Second, Hoxie asserts that Sprague never had a security interest in the cattle, which would also entitle Hoxie to judgment. Sprague's contention is that the possessory purchase money creditors, like non-possessory creditors, are required to give notice in order to obtain priority over prior perfected creditors.

Under the Kansas Uniform Commercial Code, persons who extend credit or loans may secure the obligation through the use of collateral. Because of the possibility that a debtor may attempt to use the same collateral to secure multiple obligations, the Code allows creditors to "perfect" their interests either by filing a financing statement detailing the intent with the county recorder or secretary of state, or through possession of the collateral under Kan.U.C.C.Ann. § 84-9-305. Either method of perfection thus gives prospective creditors the opportunity to know that a proffered collateral is unavailable as security, either because another creditor has filed with regard to the collateral, or simply because it is actually being held by another creditor.

Section 9-312 states the rules which determine the priority of conflicting security interests in the same collateral. Generally, priority is determined by temporal priority, whoever perfects first (or whichever security interest attaches first, if both are unperfected) is granted priority. Section 9-312(5). However, this section also recognizes the "superpriority" of purchase money security interests ("PMSI"), which are "taken or retained by the seller of the collateral to secure all or part of its price." Kan. U.C.C.Ann. § 84-9-107(b). A PMSI in inventory which meets certain notice requirements is entitled to priority over preexisting security interests in the same inventory. Section 9-312(3).

## III. Possessory Perfection and Notice under Section 9-312

Hoxie's alleged failure to adhere to these requirements is the basis of Sprague's claim to priority under Section 9-312(5). However, as the bankruptcy judge correctly perceived, the notice requirements of Section 9-312 do not contemplate a situation where, as here, perfection is accomplished through possession. *See Matter of Samuels & Co.*, 526 F.2d 1238, 1241 (5th Cir.1976) (en banc) (Code "encourages notice filing of *nonpossessory* security interest through imposition of stringent penalties for nonfiling"[2]) (emphasis

---

**2.** A perfected purchase money security interest in inventory has priority over a conflicting security

interest in the same inventory and also has prior-

added). This is evident through a careful reading of the statute. The first requirement (or "hoop" as the Comment to the Kansas U.C.C. describes it) is that the PMSI be perfected at the time the debtor receives possession of the inventory. Section 9–312(3)(a). The Comment notes that perfection under this subsection is "normally by filing". Kan.U.C.C.Ann. § 84–9–312 cmt. Only where perfection occurs through filing (rather than possession) would it be possible for the debtor to receive possession of the inventory. A seller who retains a security interest and perfects it through possession will never have a similarly-perfected interest at the same time the debtor has possession of the collateral. Perfection will, by definition, both come into existence and expire prior to the debtor's possession of the collateral.

Sprague's position ignores the precise language of the statute's second requirement. Notice is required to the holder of the prior interest:

> if the holder had filed a financing statement covering the same types of inventory (I) before the date of the filing made by the purchase money secured party, or (ii) before the beginning of the 21–day period where the purchase money security interest is temporarily perfected without filing or possession (subsection 5 of Section 9–304).

Section 9–312(b).

Because Hoxie's security interest was not in "an instrument (other than a certificated security), a negotiable document, or goods in possession of a bailee," see Kan.U.C.C.Ann. § 84–9–304(5), section 9–312(b)(ii) is inapplicable. Any notice requirement must arise under section 9–312(b)(I). However, under the clear terms of that subsection, notice is only required "before the date of filing made by the purchase money secured party". This is persuasive evidence that the statute only applies to cases where the PMSI creditor secures through filing. In this case notice will never be triggered because Hoxie, as a possessory perfector, has never (and will never) file to protect its interest.

The futility of requiring those who perfect by possession to give notice is further illustrated using Sprague's demand that Hoxie "strictly" comply with the statute. Section 9–312(c) requires that notice be given within five years prior to the time the debtor receives the inventory. However, a possessory seller will never be able to comply with this section because the debtor will never receive the inventory while the seller's interest remains perfected by possession. That is, although a seller could certainly give notice of his interest prior to delivery to the buyer, that delivery would extinguish the perfection. For this subsection to be applicable, the debtor would have to be in possession of the goods while the seller had a perfected security interest in them. Such an interest could only arise through filing.

As a result of this analysis, the bankruptcy court's grant of summary judgment to Hoxie must be affirmed unless there exists a question of fact as to Hoxie's perfection by possession. Sprague asserts that Hoxie did not really "possess" the cattle because it merely cared for them on behalf of Morken. Conversely, Hoxie asserts that because it retained its possessory security interest as an unpaid seller, Morken never obtained sufficient "rights in collateral" for Sprague's after-acquired security interest to attach under

---

ity in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if

 (a) the purchase money security interest is perfected at the time the debtor receives possession of the inventory; and

 (b) the purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory (I) before the date of the filing made by the purchase money secured party, or (ii) before the beginning of the twenty-one-day period where the purchase money security interest

is temporarily perfected without filing or possession (subsection (5) of section 84–9–304); and

 (c) the holder of the conflicting security interest receives the notification within five (5) years before the debtor receives possession of the inventory; and

 (d) the notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.

Section 9–312(3).

Kan.U.C.C.Ann. § 84–9–203(1)(c). If Hoxie is correct, then Sprague does not have a security interest in the cattle, and there is no need to determine priority among competing interests.

## IV. Possession and Rights In Collateral

■ Sprague's argument rests upon the recitation of the feedlot agreement that Morken had delivered the cattle to Hoxie so that Hoxie could "feed and care for" them. (Appellee's Ex. E). Sprague thus suggests that the cattle were on the feedlot for a purpose other than perfection. This position ignores the loan agreement, and its accompanying security agreement in which Hoxie retained a security interest, and the fact that Hoxie simultaneously retained possession of the cattle and its security interest.

The facts of this case are thus distinguishable from those in *Walker v. West Kentucky Production Credit Association*, 39 B.R. 295 (Bkrtcy.W.D.Ky.1984). There, a lender took a security interest in crops, but failed to file a financing statement. Months later, the grown crops were stored at the creditor's warehouse, where they were sold at the direction of the debtor. The court held that the creditor's possession of the crops was not intended to perfect the creditor's security interest. *Id.* at 299.

The *Walker* court pointed out the control which the debtor had over the crops, which undermined the creditor's suggestion that he, the creditor, was in possession of the crops. Sprague points to testimony in the record which suggests that Hoxie would not have sold cattle without Morken's permission. *See* (Donald Stephens Dep. at 23; Appellant's App. A–275.) However, any such sale was made subject to Hoxie's purchase money security interest, as well as its security interest for repayment of feedlot expenses, a fact explicitly detailed in these agreements. In *Walker*, it appears that the debtor personally arranged for sale of the crops stored at the warehouse and netted the proceeds from sale. 39 B.R. at 296. That the crops were stored at the warehouse was a fortuity, only part of the crops in which the creditor claimed an interest were stored at creditor's warehouse. Here, Hoxie continuously perfected by possession its interest in goods which never left its pens.

■ Morken did have an interest in the cattle while they were in the possession of Hoxie, but this interest was a "remedial" one against Hoxie. *See Crocker Nat'l. Bank v. Ideco*, 839 F.2d 1104, 1108 (5th Cir.1988) (Bright, S.J.) (sitting by designation). The court agrees that Hoxie would not ordinarily have sold the cattle without obtaining Morken's consent. However, there is no evidence that Morken himself could have moved the cattle or otherwise disposed of them on his own initiative. Under Kansas law, a delivery may be completed although the goods remain in the possession of the seller if the seller's possession "is as an agent or at the request of the buyer under an agreement to store or care for the property, *and nothing further remains to be done by either party to complete the sale.*" *Lakeview Gardens, Inc. v. Kansas*, 221 Kan. 211, 557 P.2d 1286, 1290–1291 (1976) (emphasis added). Here, something further was required, payment to Hoxie under the loan agreement. In light of Hoxie's undisputed PMSI, the court concludes that Hoxie's prudent solicitation of Morken's approval prior to selling does not alter or diminish Hoxie's perfection by physical possession of the cattle.

■ Another conclusion which flows from these facts is that Sprague never obtained a security interest in the cattle because Morken did not obtain enough rights in the cattle to transfer one. Physical possession by the debtor is normally a prerequisite for the attachment of a non-seller's security interest. *Crocker*, 839 F.2d at 1109 (debtor must have degree of control over property for interest to attach); *Samuels*, 526 F.2d at 1242 (debtor acquired rights in the cattle sufficient to allow attachment of lien upon delivery); *U.S. v. Wyoming Nat'l Bank of Casper*, 505 F.2d 1064, 1067 (10th Cir.1974) (after-acquired security interest attached when debtor took possession of goods); *O'Brien v. Chandler*, 107 N.M. 797, 800, 765 P.2d 1165, 1168 (1988) (power to create security interest arises upon delivery).

Sprague also argues that Hoxie and Morken intended a "present sale" in which physical possession by Morken was unnecessary. *See* Kan.U.C.C.Ann. § 84–2–401(3) (contemplating delivery of goods without physical movement). However, this merely recharacterizes Sprague's failed argument. There is no evidence that Morken had complete and unconditional power to move or otherwise dispose of the cattle. Without this power, the hallmark of "delivery" under Kansas law, no present sale could have occurred. In sum the court agrees with the observation in *Crocker* that "[i]t would astonish the sellers of the world to discover that a seller who has not parted with goods nor received payment for them has an interest in the goods inferior to the creditor of a holder of an executory contract to buy them." *Crocker*, 839 F.2d at 1109.

For the foregoing reasons, **IT IS HEREBY ORDERED** that the judgment of the bankruptcy court is affirmed.