### In re Freddie Darrell HALL and Loretta Hall, Debtors.

### MONTGOMERY WARD & COMPANY, INC., Plaintiff,

v.

### Freddie Darrell HALL and Loretta Hall, Defendants.

Bankruptcy No. 80–01825–S.
Adv. No. 80–0409–S.

United States Bankruptcy Court,
W. D. Missouri, S. D.

Nov. 7, 1980.

Douglas S. Evans, Springfield, Mo., for plaintiff.

James R. Doran, Springfield, Mo., for debtors.

JOEL PELOFSKY, Bankruptcy Judge.

## ORDER

Montgomery Ward & Company, hereinafter plaintiff, filed this Complaint against debtors, seeking immediate possession of a chain link fence, sold and installed by plaintiff at debtors' residence, on the ground that agreement and has not been paid for. In their answer, debtors denied that the sale was a secured transaction, alleged that the fence had become a fixture which could not be repossessed or, in the alternative, that the fence was exempt property, or could be redeemed and debtors proposed redemption for $100.00, the value of the property.

An evidentiary hearing was held on October 29, 1980. Plaintiff appeared by counsel and debtors appeared in person and by counsel. Evidence was heard and the matter taken under advisement. The Court, having been fully advised, makes the following Findings of Fact and Conclusions of Law in accordance with the requirements of Rule 752, Rules of Bankruptcy Procedure.

On May 15, 1979, debtors bought a chain link fence from plaintiff. At the same time, as an integral part of the transaction, they filled out and signed a "Major Purchase Revolving Credit Plan Credit Application" which contained, on the side where debtors signed, the following provisions:

"To secure payment of my entire account, you will retain a security interest under the Uniform Commercial Code ... in each item purchased under this agreement, whether it is installed or free standing, until that item together with any related installation and finance charges is paid in full. You may file on my behalf a financing statement ... with respect to merchandise purchased under this agreement ..."

"In the states of ... Missouri ... you will also retain a security interest in the real estate in which merchandise purchased under this agreement is installed, until the merchandise together with any related installation and finance charges is paid in full ..."

"If I default on this agreement ... you may ... enforce your security interest as permitted by law."

The fencing was installed, costing $2,876.61 for material and $858.29 in labor. On June 17, 1980, debtors filed bankruptcy, not having paid completely for the fence. The trustee has abandoned any interest in the particular item. Plaintiff proposes to remove the fence and fence posts from the property where debtors reside. Plaintiff's

credit manager testified that he had repossessed fence from time to time. He testified that the current cost of such fence installed would be $3,963.40. David Volz, a realtor, testified for plaintiff as to the value of the fence in place. In his opinion, the fence improved the value of the real estate commensurate with the cost per running foot. He was unable to testify though as to whether the fence improved the sale price of the real estate in comparison to neighboring properties.

Debtors do not contend that they did not sign the credit application. Mr. Hall also admitted that he signed that portion of the work order acknowledging completion of the work. He testified that the fence was for family purposes and had a value of about $500.00. R. M. Dugan, an appraiser and auctioneer, who testified for debtors, testified that the fence had a value of about $500.00 as salvage. He had no judgment as to its value as part of the real estate.

█ Plaintiff completed and filed a financing statement, describing the fence and its location. The financing statement was signed by debtors and was filed July 2, 1979 in Dallas County, Missouri, where they reside. The question of whether a party has a perfected security interest in goods is an issue of state law.

█ Article 9 of the Uniform Commercial Code permits the creation of security interests in fixtures, if such items are located within the jurisdiction. Section 400.9·102. If the item is a fixture, even though it is consumer goods, a financing statement, signed by the debtors, Section 400.9·402, must be filed, Section 400.9–302(1)(d), in the county where a mortgage on the real estate to which the fixture is attached would be filed. Section 400.9–401. The financing statement must adequately describe the collateral and its location. Section 400.9–203. Plaintiff has complied with all of the requirements of the Uniform Commercial Code and has a valid security interest in the fence.

The fact that the fence may be a fixture does not affect the validity of the security interest since such liens are clearly contemplated by the Uniform Commercial Code. Nor is the fact that plaintiff desires to remove it of significance. Section 400.9–313 clearly permits removal of fixtures unless the materials, such as lumber or brick, are incorporated into the structure. A fence is removable. No substantial injury to the real estate can result from its removal and the fact that the parties have executed a security agreement as to the fence suggests that removal was not beyond consideration in event of default. See 4A Collier on Bankruptcy, Paragraph 70.20 (14th Ed.). Compare *Leawood National Bank v. City National Bank & Trust Co.*, 474 S.W.2d 641 (Kan.App.1971).

█ Section 522 of the Code, Title 11, describes exempt property. The debtors' interest in real property used as a residence is exempt, up to a certain value, but the fact that property is exempt does not necessarily mean that it may not have a valid lien against it. "As under the Act, liens valid under the Code are preserved even as against the exempt property." 3 Collier on Bankruptcy, Paragraph 522.27 (15th Ed.). The lien in this case is a purchase money security interest and may not be avoided under Section 522(f) of the Code.

In the event the Court were to conclude that plaintiff held a valid, non-avoidable lien, and the Court so finds, debtors have requested that the property be valued so that they could consider redemption under Section 722 of the Code. As has been noted above, there was widely disparate testimony as to the value of the fence as installed.

Section 722 directs the Court to evaluate the security and "allow" a claim which may thereafter be paid and the property redeemed. Section 506 discusses the valuation of a secured claim. The statute envisions an undersecured creditor and directs that "such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property and in conjunction with any hearing on such disposition or use." The valuation in this case would have to be made, on the one hand, if the fence were to remain in place,

and on the other, if the fence were removed and sold second hand.

Little of the testimony offered at the hearing, and none persuasively, addresses itself to these standards of valuation. The matter, therefore, is set for hearing on the issue of the value of the security interest, subject, of course, to the parties agreeing upon a value.