In re KDT INDUSTRIES, INC., f/k/a King's Department Stores, Inc., d/b/a King's, Barker's, Kens, Coronet Cosmetics, Barkleigh Mammoth Mart, et al., Debtors.

IMPERIAL AIR FREIGHT SERVICES, INC., Plaintiff,

v.

KDT INDUSTRIES, INC., Debtors-Defendants.

Bankruptcy Nos. 82 B 11453–82 B 11515 and 82 B 11678. Adv. No. 82–6481–A.

United States Bankruptcy Court, S.D. New York.

June 23, 1983.

Angel & Frankel, P.C., New York City, for plaintiff; Bruce Frankel, Stuart I. Gordon, New York City, of counsel.

Levin & Weintraub & Crames, New York City, Goulston & Storrs, Boston, Mass., for debtors and debtors-in-possession; Richard S. Miller, William A. Horne, New York City, of counsel.

PRUDENCE B. ABRAM, Bankruptcy Judge:

Defendant, KDT Industries, Inc. ("KDT"), contracted for the use of the freight forwarding services of plaintiff, Imperial Air Freight Services, Inc. ("Imperial"), to ship merchandise from various locations in the United States to locations of KDT subsidiaries in the Caribbean.[1] Imperial seeks payment of freight charges aggregating $61,489.23 involving numerous shipments made during the period between August 27, 1981 through August 6, 1982. Between July 28, 1982 and August 6, 1982 KDT delivered merchandise to Imperial with a cost of $155,734.00 for shipment to the Caribbean. Imperial stopped these shipments in transit and asserted a lien against the goods for the $61,489.23 due it from KDT. Freight charges for the stopped merchandise accounted for $21,671.59 of the total amount sought.

On August 5, 1982 KDT and a number of its subsidiaries filed Chapter 11 petitions for reorganization under the Bankruptcy Code. Subsequently, on August 26, 1982, KDT's Caribbean subsidiaries also filed Chapter 11 petitions.

On August 19, 1982 the Bankruptcy Court issued an order directing Imperial to turn over the merchandise being detained, directing KDT to pay the $21,671.59 for freight charges on the stopped goods and granting Imperial an administrative claim in the amount of $39,817.64 in the event the court later determined that Imperial had a valid lien on the stopped goods for KDT's prior indebtedness. Imperial then released the merchandise without prejudice and initiated this adversary proceeding.

KDT has not only opposed Imperial's request for an administrative claim in the amount of $39,817.64, it has also objected to Imperial's retention of the $21,671.59 paid for the shipping charges relating to the stopped merchandise on the grounds that both payments would be preferences and in any event Imperial has no lien for the prior charges. Imperial contends that it has a valid lien on the merchandise detained for the purpose of satisfying all amounts due: both those owing on unpaid pre-petition shipments and those on the shipment stopped, all in accordance with its applicable tariff; and denies that payment would be a preference.

■ It is first necessary to address KDT's claim that *any* lien asserted by Imperial would constitute a preference under Section 547(b) of the Bankruptcy Code, 11 U.S.C. 547(b). A preference requires a finding that, among other things, there was payment of an antecedent debt and the payment enabled the creditor to receive more than other creditors of the same class. With respect to the lien asserted for freight charges on the stopped shipment, there was no payment of an antecedent debt since the lien was acquired at the moment Imperial accepted the goods shipment before it rendered any freight carrying services and further Imperial retained merchandise with a cost of $155,734.00 for freight charges of only $21,671.59. Thus Imperial was a fully secured creditor from the time it took possession of the merchandise and it did not receive more than creditors of the same class. Therefore KDT's assertion that this portion of the lien claimed by Imperial represents a preferential transfer cannot stand. Because the court finds, as set forth below, that Imperial had no lien on the stopped shipment for charges on prior shipments, it is not necessary for the court to reach the preference question since no contention has been made that Imperial is enti-

---

1. This opinion constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752.

tled to payment as an administrative expense in the absence of a lien.

Imperial asserts that it has a lien on the stopped shipment for charges due on previous shipments, *i.e.*, that it holds a cross-over lien. Imperial contends that this cross-over lien arises by virtue of the contractual relationship between it and KDT. Pursuant to Section 403(a) of the Federal Aviation Act, 49 U.S.C.A. Section 1373(a), Imperial has placed its tariff on file with the Civil Aeronautics Board. The tariff is made applicable to its dealings with KDT by the "conditions of contract" notice printed on its standard airbills:

"2.   It is mutually agreed that the shipment described herein is . . . subject to governing classifications and tariffs in effect as of the date hereof which are filed in accordance with law."

Imperial's tariff reads in pertinent part: "Rule No. 60

*Liability for Charges and Lien*

(a) The consignor and consignee shall be liable, jointly and severally, for all unpaid charges payable on account of such shipment pursuant to this tariff, including sums advanced or disbursed by the forwarder on account of such shipment.

(b) The forwarder shall have a lien on the shipment for all sums due and payable to the forwarder. In the event of nonpayment, the forwarder shall place the shipment in storage as provided in Rule 110 and will dispose of the shipment at public sale, paying itself out of the proceeds of such sale, all sums due and payable, including storage charges. No sale or disposal pursuant to this rule shall discharge liability to any greater extent that [sic] the proceeds thereof less selling expenses, if any, and the consignor and consignee shall remain liable, jointly and severally, for any deficiency."

Air freight tariffs " . . . are conclusive and exclusive, and the rights and liabilities between . . . [the parties] are governed thereby." *Tishman & Lipp, Inc. v. Delta Air Lines,* 413 F.2d 1401, 1403 (2d Cir.1969). "The interpretation of a tariff ordinarily presents a question of law. . . . [T]he terms of the tariff should be given their ordinary commercial meaning, (citations omitted), and strained or unnatural constructions are not permitted." *Emery Air Freight Corp. v. U.S.,* 499 F.2d 1255, 1259 (Ct.Cl.1974). Interpretation efforts should avoid absurdity, and be reasonable and consistent with the purposes of the tariff. *See Western Transp. Co. v. Webster City Iron & Metal Co.,* 657 F.2d 116 (7th Cir.1981).

While section (a) of Rule No. 60 of Imperial's tariff places liability on the consignor " . . . for all unpaid charges payable on account of such shipment pursuant to this tariff, including sums advanced or disbursed by the forwarder on account of such shipment," section (b) goes on to give the forwarder " . . . a lien on the shipment for all sums due and payable to the forwarder" and provides for both the consignor and consignee to remain liable in the event of a deficiency if the lien is foreclosed. Taken together it is inescapable that section (b) is granting the forwarder a lien on *that particular* shipment referred to in section (a) on which charges remain unpaid.

Imperial would have this court read section (b) without reference to section (a). It contends that the two sections are distinguished because of section (a)'s imposition of joint liability on the consignor and consignee, while section (b) speaks solely of " . . . the forwarder's lien on a shipment for all sums then due and owing to the forwarder by the consignor only. . . ." (Plaintiff's brief at 12). However contrary to Imperial's position, case law is clear that " . . . *all* provisions of a tariff or document are to be considered in determining the meaning to be ascribed to one provision thereof, and that meaning should be given which will give reasonable meaning to all provisions and not render a part thereof mere surplusage or create conflicts." *Southern Pacific Transp. Co. v. U.S.,* 454 F.2d 740, 745 (Ct.Cl.1972) (emphasis added).

This court believes that if it was the intention of Imperial to be able to retain goods presently in its possession for unpaid charges due on prior shipments, it had the duty to place an unambiguous provision in its tariff to that effect. This court will not supplement the tariff with words and interpretations which it was not meant to convey. Furthermore, ambiguities in a tariff are to be resolved against the carrier and in favor of the shipper and consignee. *Great Northern Ry. Co. v. U.S.,* 178 Ct.Cl. 226 (1967).

It is neither logical nor commercially practical that property belonging to the buyer-consignee be charged with the prior debts owed by the consignor-shipper to the carrier. The parent/subsidiary relationship present in this case does not alter the situation. Section 2–401(2)(a) of the Uniform Commercial Code provides that:

> "if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment."

Thus, in the ordinary case the receiver of the shipped goods is the owner of the goods and there is no rational logic in expecting that the owner of the goods would accept the responsibility for the prior debts of the shipper, as Imperial would have this court hold. Certainly if that is to be the result, the consignee must be placed on notice in plain and unambiguous language that its goods may be held until both the freight on the particular shipment is paid as well as any prior debts of the shipper, even though arising from shipments to persons wholly unrelated to the consignee.

Imperial's contention that it possesses a cross-over lien on the stopped shipment for charges due on previous shipments fails by the very terms, or, lack thereof, of its own tariff. "A question of tariff interpretation 'does not differ in character from that presented when construction of any other document is in dispute.'" *Baggett Transportation Co. v. U.S.,* 319 F.2d 864, 868 (Ct.Cl.1963). The words must be given their plain and ordinary meaning, and this court refuses to read into the tariff provisions absent from its original drafting. Imperial's brief makes extensive reference to the force its tariff carries, that such regulation is primarily a matter of federal law, enforced by the C.A.B., and as such prevails over common law rules. However the crux of the matter remains the interpretation of the tariff, not the strength it rests upon.

Parties to submit judgment in accordance with this decision.