In re LISSNER
CORPORATION, Debtor.

William A. BRANDT, Jr., Trustee in
Bankruptcy, Appellee,

v.

R & D TRUCKING CO.,
INC., Appellant.

No. 88 C 2090.

United States District Court,
N.D. Illinois, E.D.

April 4, 1989.

Stephen T. Bobo, Towbin & Zazave, Chicago, Ill., for appellee.

Peter G. Swan, Emalfarb, Swan & Bain, Highland Park, Ill., for appellant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

On January 8, 1988, Judge Katz of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, ("Bankruptcy Court") entered an order denying R & D Trucking Company's ("R & D") claim for a carrier's lien against the estate of the Lissner Corporation ("Lissner"). Ruling upon R & D's motion to determine the status of its claim, Judge Katz held that "R & D had no enforceable lien claim against the Lissner estate and its $14,284 claim against the Lissner estate is completely unsecured." The basis for Judge Katz's ruling was his determination that the opinion and order of Bankruptcy Judge Hertz in an earlier adversary action, No. 85 A 1485, was *res judicata* in favor of the Lissner estate as to R & D's motion.

On January 26, 1988, R & D filed its Notice of Appeal from Judge Katz's January 8 order. On February 2, 1988, R & D filed its Statement of Issues on Appeal. Presently pending before the Court is the motion of the trustee in bankruptcy for the Lissner estate, William A. Brandt, Jr., to determine the scope of issues on appeal, or in the alternative, to dismiss the appeal. After reviewing the respective briefs submitted by the parties, the Court requested supplemental memoranda from the parties on the following issues:

1) Was Judge Hertz's July 21, 1987 decision dismissing R & D's counterclaims a "final judgment", "order" or "decree" under 28 U.S.C. § 158(a) from which an appeal could have been taken? In answering this question, consider whether Fed.R.Civ.P. 54(b), made applicable in adversary proceedings by Bankr.R. 7054(a), governs the issue of "finality," or whether there are special rules of bankruptcy finality which apply to decisions in adversary actions;

2) Is there anything in the record below which sheds light on whether or not Judge Hertz considered his decision to be a final judgment, order, or decree?

3) What is the current status of Adversary Action 85 A 1485?

*See* Minute Order dated February 13, 1989. The parties have filed these memoranda.

For the reasons discussed below, the trustee's motion to dismiss R & D's appeal is denied. Moreover, for the reasons set forth below, the Court holds that Bankrupt-

cy Judge Katz erred in holding Judge Hertz's decision as *res judicata* to R & D's motion and reverses Judge Katz's January 8 order.

## II. THE BANKRUPTCY COURT PROCEEDINGS

Because Judge Katz's order was based on the *res judicata* effect of Judge Hertz's opinion, any determination of the scope of issues properly before this court on appeal requires an examination of Judge Hertz's opinion and an understanding of the underlying dispute between R & D and the trustee. The dispute at issue in the adversary proceeding arose from R & D's efforts to collect its debt from the estate of Lissner after Lissner had filed its petition in bankruptcy. The trustee alleged that Lissner had contracted with R & D to transport a shipment of copper. At the time of this contract, Lissner owed R & D approximately $14,000 for previous shipping charges. On September 16, 1985, R & D picked up the shipment of copper. Lissner filed for bankruptcy under Chapter 11 of the Bankruptcy Code on September 18, 1985. Upon learning of Lissner's bankruptcy, R & D seized the copper for its own possession. R & D claims it maintained possession of the copper to secure its carrier lien rights for the value of its previous shipping charges.[1]

The adversary proceeding before Judge Hertz was commenced when the trustee filed an adversary complaint against R & D, its officers, directors and agents, alleging conversion of property, breach of contract, and violation of the automatic stay, and seeking a turnover of property. R & D answered the trustee's complaint and filed counterclaims alleging fraud and breach of contract, and seeking enforcement of its carrier's lien. R & D moved to dismiss the trustee's complaint and the trustee moved to dismiss R & D's counterclaims. Both motions were made pursuant to Fed.R.Civ.P. 12(b)(6).

Judge Hertz granted the trustee's motion to dismiss R & D's counterclaims and denied R & D's motion to dismiss the trustee's complaint. Addressing first R & D's

arguments in support of its motion to dismiss, Judge Hertz rejected R & D's argument that maintaining possession of Lissner's property was necessary to secure its carrier lien rights:

> In its motion to dismiss, R & D Trucking Co. contends it was merely enforcing its statutory or common law lien rights to seize Lissner's property for prior debts. However, it is well-settled that the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code precludes enforcement of a creditor's lien rights against the property of a debtor in bankruptcy for prepetition debts. § 362(a)(4).

(Hertz Op. at 2). With regard to R & D's counterclaim asserting its carrier lien, Judge Hertz dismissed the counterclaim on the following grounds:

> ... R & D Trucking states it took control of the copper under a carrier's lien which it now seeks to validate.
>
> As previously noted, any lien rights R & D might have against Lissner is unenforceable against the estate's property for prepetition debts.

(Hertz Op. at 4).

R & D subsequently filed a motion to determine the status of its claim before Bankruptcy Judge Katz. On January 8, 1988, Judge Katz dismissed R & D's motion, holding that Judge Hertz's earlier ruling dismissing R & D's counterclaim was *res judicata* as to R & D's motion. In his one-page order, Judge Katz held that "R & D had no enforceable lien claim against the Lissner estate and its $14,284 claim against the Lissner estate is completely unsecured."

## III. DISCUSSION

### A. Jurisdictional Issues

In their supplemental memoranda, both parties conclude that the July 21, 1987 opinion of Judge Hertz dismissing R & D's counterclaim was not a "final" appealable order. Trustee's Suppl.Br., at 6 ("the 1987 Order is interlocutory"), R & D Suppl. Mem., at 4. For the first time, however, in

---

1. The recitation of these facts is taken from Judge Hertz's July 21, 1987 opinion.

its supplemental memorandum, the trustee argues that Judge Katz's 1988 order was interlocutory as well. This contention is a challenge to the Court's jurisdictional basis to hear this appeal and must be addressed first before turning to the merits of Judge Katz's decision. *See Matter of Morse Electronic Co., Inc.,* 805 F.2d 262, 264 (7th Cir.1986) ("Jurisdiction is the first question in every appeal").

The trustee has maintained throughout these proceedings that Judge Katz's order is essentially a restatement of Judge Hertz's earlier order. Trustee's Suppl.Br., at 6. Because he concludes that Judge Hertz's order was "interlocutory," the trustee concludes that Judge Katz's order must necessarily be interlocutory as well for the same reasons. For the reasons stated below, the Court agrees with the trustee's conclusion that Judge Hertz's order was interlocutory, but disagrees with the trustee's conclusion that Judge Katz's order was also interlocutory. The Court finds that Judge Katz's order was a "final" appealable order and, accordingly, rejects the trustee's motion to dismiss this appeal for want of jurisdiction. Because the Court agrees with the first premise of the trustee's argument—that Judge Hertz's order was interlocutory—the Court will begin by analyzing the status of Judge Hertz's order.

### 1. *Judge Hertz's July 21, 1987 Order*

Jurisdiction of this Court to review orders of the bankruptcy court is governed by 28 U.S.C. § 158(a) which provides, in pertinent part:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and with leave of court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges....

As is clear from the statute, final orders may be appealed as of right by a party, while interlocutory orders may only be appealed with leave of the district court. *Central Ill. Sav. & Loan Ass'n v. Ritten-*

*berg Co., Ltd.,* 85 B.R. 473, 476 (N.D.Ill. 1988). In determining whether Judge Hertz's order was "final" or "interlocutory," the effect of Fed.R.Civ.P. 54(b), made applicable by Bankruptcy Rule 7054(a), must be taken into account. Where, as in this case, the bankruptcy court enters an order on one or more claims of a multiple claim lawsuit, that order may be final and appealable if the lower court certifies that there is no just reason for delay and expressly directs entry of judgment in accordance with Rule 54(b).

█ In his July 21, 1987 opinion dismissing R & D's counterclaims, Judge Hertz failed to make "an express determination that there is no just reason for delay." Moreover, in response to the Court's inquiry, the parties agree that there is nothing in the bankruptcy court record which would indicate that Judge Hertz intended his decision to be "final." If Judge Hertz's order was outside the bankruptcy context, there would be no question that it would not be final for purposes of appeal. Because, however, this is an adversary proceeding in a bankruptcy case, where special considerations require a more flexible definition of finality, *see In re Sandy Ridge Oil Co., Inc.,* 807 F.2d 1332, 1334 (7th Cir.1986), Judge Hertz's failure to make the requisite Rule 54(b) findings does not end the "finality" inquiry.

"Although Bankruptcy Rule 7054(a) gives Rule 54(b) life in the bankruptcy context, the case law makes clear that apearance notwithstanding, the former is not the latter's clone." *Central Ill. Sav. & Loan,* 85 B.R. at 477. While Rule 54(b) findings are necessary to confer finality on orders which adjudicate fewer than all the claims or the rights and liabilities of fewer than all the parties in cases outside of the bankruptcy context, the Seventh Circuit has held on several occasions that Rule 54(b) findings need not necessarily be made to confer "finality" on such orders in bankruptcy cases. *See In re Berke,* 837 F.2d 293, 294 (7th Cir.1988); *Matter of Morse Electronic Co., Inc.,* 805 F.2d 262, 265 (7th Cir.1986). This relaxation of Rule 54(b)'s requirements stems from the recognition

"the bankruptcy proceedings and their subordinate adversary proceedings contain many claims that would be stand-alone litigation outside of bankruptcy." *Berke*, 837 F.2d at 294. Although the bankruptcy court may enter orders in adversary proceedings that would finally dispose of separate suits outside of bankruptcy, "the bankruptcy case, as the forum for a composition among creditors, may proceed while each claim is reduced to judgment." *Id.*

With these considerations unique to bankruptcy cases in mind, the Seventh Circuit has held that "orders wrapping up an adversary proceeding with respect to a single party might be appealable without findings under Rule 54(b)." *Berke*, 837 F.2d at 294. "When one creditor's position is finally determined, (subject to proration at the end of the case to reflect the amount of assets and other allowed claims)," *Morse*, 805 F.2d at 264, and all that "remains corresponds to the collection stage in an ordinary lawsuit," *In re Wagner*, 808 F.2d 542, 545 (7th Cir.1986), the disposition is "final" for purposes of Section 158(a).

In *Berke*, the plaintiff Berke filed an adversary proceeding against the City of Chicago to recover compensation for work performed by Berke after he filed his bankruptcy petition. The City filed a counterclaim against Berke under RICO, alleging that Berke had defrauded the City and violated the mail fraud statute by billing the City for work before and after the petition which he did not perform. 837 F.2d at 294. The court granted summary judgment in favor of Berke on his request for payment of his post-petition fees but did not rule on the counterclaim and did not make any findings pursuant to Rule 54(b) and Bankruptcy Rule 7054(a). The City appealed the court's order. *Id.*

The Seventh Circuit dismissed the appeal, holding that the order granting summary judgment was not a final order. The presence of the counterclaim in the adversary proceeding left the "bulk of the issues" in the proceeding unresolved. *Id.* The counterclaim involved the same parties and since the City was maintaining that some of Berke's claims were fraudulent,

the disposition of the counterclaim could reduce the amount of the judgment entered in Berke's favor. *Id.* Given the significant overlap between the two claims, the Court found that the order granting summary judgment did not wrap up the adversary proceeding with respect to Berke. Under such circumstances, the Court held that "in the absence of the findings required by Fed.R.Civ.P. 54(b)—made applicable in adversary proceedings by Bkr.R. 7054(a)—" the order of partial judgment was not final. *Id.*

Applying the Seventh Circuit's analysis in *Berke* to this case, it is clear that Judge Hertz's order was interlocutory. R & D's counterclaim and the trustee's claims arose out of the same set of facts and involved the same parties. Judge Hertz's order left all of the trustee's claims against R & D unresolved, and Judge Hertz failed to make the requisite findings of Bkr.R. 7054(a).

### 2. *Judge Katz's January 8, 1988 Order*

■ To support his argument that Judge Katz's order was also interlocutory, the trustee points to the fact that in his January 8, 1988 order denying R & D's claim for a carrier's lien against the Lissner estate, Judge Katz also failed to make the requisite findings pursuant to Bkr.R. 7054(a). But the trustee's argument ignores the fact that Judge Katz's order arose in the context of R & D's motion to determine the status of its claims in the bankruptcy case, and not in the context of a separate adversary proceeding involving multiple claims for relief. The only issue before Judge Katz was the status of R & D's claim and Judge Katz's order that "R & D had no enforceable lien claim against the Lissner estate and its $14,284 claim against the Lissner estate is completely unsecured" left no remaining issues unresolved. Bkr.R. 7054(a), therefore, had no application to this proceeding.

Aside from the different procedural posture in which the two orders were made, Judge Katz's order contained additional findings from those contained in Judge Hertz's opinion. In the adversary proceeding, Judge Hertz dismissed R & D's coun-

terclaim, finding that "any lien rights R & D Trucking might have against Lissner is unenforceable against the estate's property for prepetition debts." Although Judge Hertz held that R & D's claim was "unenforceable," the meaning of which is unclear from his opinion and which will be discussed below, Judge Hertz did not value R & D's claim or classify it as secured or unsecured. In his January 8 order, Judge Katz made the additional findings that R & D's claim was worth $14,284 and that it was "completely unsecured." These additional findings essentially clarified and "finalized" Judge Hertz's earlier ruling and gave R & D the right to appeal Judge Katz's order to this Court.

The Seventh Circuit case of *Matter of Morse Electronic Co.*, 805 F.2d 262 (7th Cir.1986) clarifies any uncertainty over the status of Judge Katz's order. In *Morse,* the bankruptcy judge ruled in an adversary proceeding that a creditor, Hoosier, was entitled to a secured claim for $40,000 and an unsecured claim for $25,000 against the bankrupt's estate. The district court reversed the bankruptcy's judge's ruling, holding that the creditor was entitled to an unsecured claim for $65,000. In addressing whether the district court's disposition was "final" for purposes of appeal, the Seventh Circuit held that the district court order, which accepted and valued the creditor's claim at $65,000, was a "final order" where "[a]ll that remains is the decision what percentage of Morse's unsecured claims will be paid." *Id.* at 265. The "[f]inality of the order comes from the fact that it resolves *all* of Hoosier's claims against the estate." *Id.*

As in *Morse,* Judge Katz's order here wraps up the issue of the status of R & D's claim. Although the trustee's claims against R & D for breach of contract, violation of the automatic stay and conversion in the adversary proceeding may subject R & D to damages, none of these claims will affect the amount or status of R & D's claim for $14,424. Accordingly, Judge Katz's order was a final appealable order, notwithstanding his failure to make findings pursuant to Bkr.R. 7054(a).

B. Motion to Determine Scope of Issues on Appeal or, in the Alternative, to Dismiss Appeal

Both parties agree that the scope of the issues on appeal depends upon the meaning and effect of Judge Hertz's opinion dismissing R & D's counterclaim seeking enforcement of its carrier's lien. Not surprisingly, the trustee and R & D have different interpretations of Judge Hertz's words. In fact, the trustee and R & D each maintain that Judge Hertz's opinion speaks so clearly in support of their respective positions as to require no interpretation at all.

R & D contends that Judge Hertz's opinion dismissing R & D's counterclaim was "explicit[ly]" based upon the "procedural bar" of Section 362(a)(4) which prevents a creditor from taking any action to enforce its lien rights. (R & D Response at 6). According to R & D, Judge Hertz "expressly reserved" ruling on the validity or the "merits" of its lien claim. *Id.* at 5. The issue of validity, argues R & D, was determined for the first time by Judge Katz in his ruling on its motion to determine the status of its claim. Therefore, R & D seeks to litigate two interrelated issues on appeal: (1) whether Judge Katz erred in holding that Judge Hertz's order is *res judicata* in favor of Lissner; and (2) whether Judge Katz erred in holding that Judge Hertz found that R & D had no carrier lien rights. *Id.* at 5–6.

Conversely, the trustee argues that R & D's motion to determine the status of its claim raised the same arguments which were earlier rejected by Judge Hertz. According to the trustee, "it is apparent from the language of Judge Hertz's opinion" that Judge Hertz determined that he did not need to rule on the fully briefed issue of the validity of R & D's lien because "even if such a lien existed, bankruptcy law would preclude it from being enforced for pre-petition charges because it was not perfected as of the date of the filing of Lissner's Chapter 11 petition." (Reply Mem. at 2). The trustee, therefore, seeks to limit the scope of the appeal to the question of whether Judge Katz correctly

found that Judge Hertz's opinion was *res judicata* to the lien issue. *Id.* at 4.

The trustee's conclusion that "it is apparent" from the wording of Judge Hertz's opinion that he declined to reach the issue of validity because R & D's lien was not *perfected* at the time of the petition is anything but apparent to this Court (emphasis supplied). Judge Hertz may well have believed that R & D's lien was unenforceable because it was not perfected at the time of the petition. But the complete lack of any support for this belief in his opinion prevents the Court from agreeing with the trustee's interpretation.

Even if Judge Hertz had found that R & D failed to "perfect" its lien prior to the commencement of the bankruptcy, such a failure to "perfect" would not necessarily affect the "validity" of the underlying lien. *See Landmark v. Schaefbauer,* 41 B.R. 766, 768, 769 (Bankr.D.Minn.1984) (although post-petition act of recording a mortgage is an act to perfect a lien in violation of § 362(a)(4), only the recording is nullified by the stay; the validity and enforceability of the mortgage remains unaffected). If a security interest is "created" prior to the filing of the bankruptcy petition, the security interest may remain valid even though the post-petition act of perfecting it is a nullity. *Id.* at 768 (act of recording mortgage is an "act to perfect" a mortgage and not an act to "create" a mortgage where Minnesota law recognizes the validity of an unrecorded mortgage).[2]

Like the issue of perfection, it is possible that Judge Hertz believed that R & D's actions in taking control of the copper was a post-petition act to *create* a lien and as such violated the automatic stay, although R & D clearly had possession of the copper

prior to the filing of the petition. *See In re KDT Indust., Inc.,* 31 B.R. 61, 62 (Bankr.S. D.N.Y.1983) (carrier which acquired lien at moment it accepted debtor's goods for shipment became secured creditor at time of possession). If R & D's lien was "created" post-petition, the automatic stay provision of § 362(a)(4) would nullify R & D's carrier lien and leave R & D with only an unsecured claim against the estate. *See In re New England Carpet Co., Inc.,* 26 B.R. 934, 939, 940 (Bankr.D.Vt.1983) (where post-petition act of filing notice "creates" as well as "perfects" tax lien under Vermont law, creation of lien is subject to automatic stay and thus claim for personal property taxes was unsecured). The question of lien "creation", however, like the question of lien "perfection", requires an examination of state law, an examination never undertaken by Judge Hertz. *See, e.g., Landmark,* 41 B.R. at 769; *New England Carpet Co.,* 26 B.R. at 939, 940; *In re Hall,* 8 B.R. 318, 320 (Bankr.W.D.Mo.1980).

Although the Court finds that the meaning of Judge Hertz's opinion is by no means obvious, the Court is inclined to agree with R & D's interpretation. The Court understands Judge Hertz's ruling that "any lien rights R & D Trucking *might* have against Lissner is unenforceable against the estate's property for prepetition debts" (emphasis added) to mean that Judge Hertz did not decide the issue of validity because, *under § 362(a)(4),* even if such a lien were valid, R & D was precluded from taking any steps to enforce its lien. Thus, the Court believes that Judge Hertz based his dismissal of R & D's counterclaim on § 362(a)(4) rather than on any determination of the nature of R & D's claim against the Lissner estate.[3]

---

**2.** The Court notes that the question of "perfection", which applies to "security interests" as defined under Article 9 of the Uniform Commercial Code ("UCC"), *see* Ill.Rev.Stat. ch. 26 ¶ 9–301 *et seq.,* may not even be applicable to carrier's liens. Neither Ill.Rev.Stat. ch. 26, ¶ 7–307 *et seq.,* the statute which the trustee contends governs any carrier's lien asserted by R & D, nor the common law carrier's lien cases cited by R & D contain any discussion of "perfection." The reason for this may be that carrier's liens are specific liens which attach to goods involved in one transaction rather than general

liens or security interests. Since carriers do not generally claim a lien for charges in relation to other goods or lend money on the security of goods in their possession, there are no provisions for a general lien or a security interest in Section 7–307. *See* Uniform Commercial Code Comment, Ill.Rev.Stat. ch. 26 ¶ 7–307 at 93.

**3.** The Court's interpretation is buttressed by the fact that both the parties and Judge Hertz clearly understood that the validity of R & D's lien was at issue in its counterclaim. The parties extensively briefed the question of whether R &

R & D suggests that Judge Hertz dismissed its counterclaim because the act of filing its counterclaim was an act to enforce its carrier's lien claim in bankruptcy court in violation of § 362(a)(4). According to R & D, the automatic stay operated as a procedural bar to its counterclaim; until R & D moved to modify the automatic stay, § 362 barred R & D from filing its counterclaim. The Court does not agree with this interpretation. The automatic stay does not preclude a creditor from seeking to enforce its claims in bankruptcy court; what is stayed is the taking of any steps by a creditor to enforce a lien in a non-bankruptcy forum. R. Ginsberg, 1 *Bankruptcy*, ¶ 3003 at 3014 (Supp.1988).

The automatic stay does, however, prevent a creditor from repossessing collateral or otherwise gaining possession of property, or enforcing a claim through self-help methods. *Id.* At common law, one means of enforcing a carrier's lien was to retain possession of the property until the debt was paid. *See, Knapp Stout & Company v. McCaffrey*, 52 N.E. 898, 178 Ill. 107 (Ill. 1899), *aff'd*, 177 U.S. 638, 20 S.Ct. 824, 44 L.Ed. 921 (1900). In denying R & D's motion to dismiss the trustee's adversary complaint, Judge Hertz held that R & D's actions in retaining possession of the goods and demanding payment from Lissner were acts to *enforce* its lien in violation of the automatic stay. By stating that *"[a]s previously noted,* any lien rights R & D Trucking might have against Lissner is unenforceable against the estate's property for prepetition debts," Judge Hertz apparently relied upon this same meaning of "enforcement" to dismiss R & D's counterclaim.[4]

Because the Court, after careful scrutiny of Judge Hertz's opinion, concludes that Judge Hertz did not address the issue of whether R & D had carrier lien rights, the second issue in R & D's statement of issues on appeal—whether Judge Katz erred in holding that Judge Hertz's opinion found that R & D had no carrier lien rights—is no longer at issue. If Judge Katz based his order on his belief that Judge Hertz found that R & D had no carrier lien rights, then he was in error. The only issue remaining for appeal is whether Judge Katz erred in holding that Judge Hertz's opinion was *res judicata* in favor of the Lissner estate as to R & D's motion.

## C. The Appeal

The trustee states in its brief that "no need for further briefing exists in this appeal." (Reply Mem. at 5). In light of this statement and the fact that both parties did argue the *res judicata* issue in their briefs, the Court will resolve the remaining question of whether Judge Katz erred in finding Judge Hertz's opinion *res judicata* as to R & D's motion to determine the status of its claims.

As previously discussed, jurisdiction of this Court to review Judge Katz's January 8, 1988 order is provided by 28 U.S.C. § 158(a). The issue on appeal—whether Judge Katz erred in holding Judge Hertz's July 21, 1987 order as *res judicata* to R & D's motion to determine the status of its claims—is an issue of law subject to this Court's independent review. *See Matter of*

D had carrier's lien rights under Illinois law and Judge Hertz expressly recognized that validity was at issue when he stated in his opinion that "R & D Trucking states it took control of the copper under a carrier's lien which it now seeks to *validate*" (emphasis added). Thus, it appears that Judge Hertz chose not to decide the issue of validity, instead resting his decision to dismiss R & D's counterclaim on § 362(a)(4).

**4.** The Court notes that its difficulty in interpreting Judge Hertz's sketchy decision was shared by the parties. As previously discussed, the meaning of "enforce" suggested by R & D makes no sense as a matter of bankruptcy law. The trustee did not even attempt to discern what

Judge Hertz meant by basing his dismissal on § 362(a)(4)'s bar against actions to enforce liens. Instead, the trustee's interpretation focused on § 362(a)(4)'s bar against "perfection" of liens. This interpretation, although plausible, depends upon an analysis of issues of state law which simply is not present in Judge Hertz's opinion. The interpretation ultimately settled upon by the Court is the interpretation which the Court believes is compelled by what little reasoning the Court can discern from Judge Hertz's decision. The Court makes no finding as to whether Judge Hertz's decision is correct as a matter of bankruptcy law.

*Evanston Motor Co., Inc.*, 735 F.2d 1029, 1031 (7th Cir.1984) (district court required to evaluate factual questions under "clearly erroneous" standard but must view questions of law independently).

The essential elements of *res judicata* are (1) a final judgment on the merits in an earlier action, (2) an identity of the cause of action in both the earlier and later suits, and (3) an identity of parties or privies in the two suits. *Smith v. City of Chicago*, 820 F.2d 916, 917 (7th Cir.1987). In their briefs, the parties dispute whether Judge Hertz's dismissal of R & D's counterclaim was a "dismissal on the merits" so as to preclude R & D from raising the issue of the validity of its lien in a subsequent motion.

The trustee argues that Judge Hertz dismissed R & D's counterclaim under Rule 12(b)(6) because R & D was not entitled to relief under any set of facts. According to the trustee, such a dismissal is clearly "on the merits" and is *res judicata* as to R & D's motion. Conversely, R & D contends that Judge Hertz's dismissal was premised upon the "procedural bar" of the automatic stay provision of the Bankruptcy Code. Likening a dismissal under § 362(a)(4) to a dismissal based on lack of jurisdiction or some other ground where the plaintiff's failure to satisfy a precondition precludes the Court from ruling on the merits (in this case, the lifting of the automatic stay), R & D contends that such a dismissal is not *res judicata* on the issue of whether R & D has lien rights. *See Costello v. United States*, 365 U.S. 265, 286–87, 81 S.Ct. 534, 545, 5 L.Ed.2d 551 (1961) (Fed.R.Civ.P. 41(b) incorporated the common law principle that dismissals on grounds not going to the merits did not bar subsequent actions on the same claim).

The Court need not reach the issue of whether Judge Hertz's dismissal of R & D's counterclaim was "on the merits".

"The rules of *res judicata* are applicable only when a *final judgment* is rendered." Restatement (Second) of Judgments, § 13 (1980) (emphasis supplied). *See also Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). As both parties concede, and this Court agrees, Judge Hertz's order was an interlocutory order rather than a final order. Absent the appropriate findings under Bkr.R. 7054(a), Judge Hertz's order could not have any *res judicata* effect. *See* 10 C. Wright & A. Miller & M. Kane § 2661 at 127–128 ("... if no certificate issues, the court's decision or order remains interlocutory and the above [res judicata] effects will not take place."); *Republic of China v. American Express Co.*, 190 F.2d 334 (2d Cir.1951).[5] Accordingly, Judge Katz's order was wrong as a matter of law and must be reversed.

■ The Court notes that if Judge Hertz intended his dismissal of R & D's counterclaim based on § 362(a)(4)'s bar to any action to *enforce* a lien to be *res judicata* as to R & D's motion to determine the status of its claims, the Court finds that Judge Hertz was in error. The Court believes that to hold otherwise would contravene one of the very purposes for which the automatic stay provision was designed. The purpose of that provision "is to preserve what remains of the debtor's insolvent estate and to provide a systematic liquidation procedure for all creditors, secured as well as unsecured." *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982). The automatic stay freezes the rights of creditors at the time the bankruptcy petition is filed, assuring that "the status of creditors as exists at the time of a debtor's filing is maintained." *In re Rogers*, 39 B.R. 295, 298 (Bankr.W.D.Ky.1984). *See also* R. Ginsberg, 1 *Bankruptcy*, ¶ 3003 at 3016.1 (creditors who are unsecured at the

---

5. In *Alexander v. Chicago Park District*, 773 F.2d 850, 855 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986), the Seventh Circuit held that under certain circumstances, an order may be "final" for *res judicata* purposes even if technical compliance with Fed. R.Civ.P. 54(b) is not observed. In *Alexander,*

the Court held that a jury verdict was sufficiently final for *res judicata* purposes, because there had been an adequate hearing (a protracted jury trial). Here, unlike *Alexander*, there has been no Bankruptcy Rule 7054(a) certification, nor has there been a trial on the merits.

time of the filing of the petition remain unsecured during the bankruptcy and are precluded from taking any steps to change the status of their claims).

The automatic stay provision is not, however, designed to deprive a secured creditor with a valid lien claim of his right to share in the distribution of proceeds of the estate as a secured creditor. Ginsberg, ¶ 3006 at 3018 (that a secured creditor is precluded from trying to enforce its claim "is not to say the secured claim is lost in bankruptcy"). The Court has found that Judge Hertz based his dismissal of R & D's counterclaim on § 362(a)(4)'s bar against acts to enforce a lien against the property of the debtor and did not rule on the issue of the validity of R & D's carrier's lien claim. To now hold that a dismissal based on § 362(a)(4) has a *res judicata* effect would contravene the purposes of the automatic stay provision by depriving a creditor with a potential secured claim of his rights as a "secured creditor" under the Code. The automatic stay provisions of the Code were designed to preserve the status quo, not to preempt a determination of the status quo.[6]

## IV. CONCLUSION

The trustee's motion to dismiss R & D's appeal for lack of jurisdiction is denied. With respect to the motion to determine the scope of the appeal, the Court accepts the trustee's contention that no further briefing on the appeal is necessary and has resolved the appeal on the record before it and the memoranda of the parties. Because Judge Hertz's order dismissing R &

D's counterclaims was an interlocutory order, the Court holds that Bankruptcy Judge Katz erred in his January 8, 1988 order holding that Judge Hertz's order was *res judicata* as to R & D's "Motion to Determine the Status of Claims." Accordingly, the Court reverses Judge Katz's order. Moreover, because the Court finds that there has never been a ruling on the validity of R & D's carrier lien, the Court remands this case back to the Bankruptcy Court for a determination of the validity of R & D's carrier's lien.

---

**6.** If Judge Hertz had based his dismissal of R & D's counterclaim on § 362(a)(4)'s bar against post-petition acts to "create" or "perfect" a lien, the Court's decision on *res judicata* grounds might well have been different. In order for a lien to be valid, it must have been "created" under state law prior to the petition. *In re North Side Lumber Co.,* 83 B.R. 735, 737 (9th Cir. BAP 1987) *aff'd,* 865 F.2d 264, (9th Cir. 1988) (Table, text in WESTLAW, 1988WL131643). Post-petition acts to "create" a lien in violation of § 362(a)(4) render the lien null and void. *Matter of Reserves Develop. Corp.,* 78 B.R. 951, 958 (W.D.Mo.1987).

The question of post-petition perfection under the Code is much more complicated. Section 362(b)(3) of the Code excepts acts "to perfect an

interest in property" from the automatic stay "to the extent that the trustee's rights and powers are subject to perfection under § 546(b)." Section 546(b) permits post-petition perfection to be effective against the trustee, if under applicable state law the perfection "relates back" to a time before the bankruptcy. 4 *Collier on Bankruptcy* ¶ 546.03 at 546–12 (15th ed. 1988); *In re Saberman,* 3 B.R. 316 (N.D.Ill.1980). A threshold question is whether "perfection" of a lien is necessary to "create" a lien under state law. *See discussion, supra* at 817–18. If the answer is yes, then the bankruptcy court must ask whether post-petition perfection is permitted under the Code. Neither of these two questions was addressed by Judge Hertz in his July 21, 1987 order.